## Richmond

**Linda W. Laughorn, An Infant, Etc. v. Angela Denise Eanes, An Infant, Etc.**

November 28, 1966.

Record No. 6320.

Present, All the Justices.

*Frank D. Harris* (*Hodges and Harris,* on brief), for the plaintiff in error.

*Lester L. Dillard* and *Don P. Bagwell* (*Tuck, Bagwell, Dillard & Mapp*, on brief), for the defendant in error.

GORDON, J., delivered the opinion of the court.

■■■■ Linda W. Laughorn appeals from a $10,000 judgment in favor of her guest-passenger, Angela Denise Eanes, for personal injuries sustained in an automobile accident. The question is whether the evidence supports the finding that Mrs. Laughorn was grossly negligent in the operation of her automobile.

The accident happened in South Boston, Virginia, on April 24, 1964, at approximately 4:15 p.m. Earlier in the afternoon, while visiting at Angela's home, Mrs. Laughorn had agreed to take care of Angela while her mother was away from home on a shopping trip. Angela was only four weeks old, and her mother (Mrs. Laughorn's sister-in-law) preferred not to take Angela with her on the shopping trip. Mrs. Laughorn told Angela's mother she would take Angela to her sister's home, whom Mrs. Laughorn intended to visit that afternoon. Mrs. Laughorn, who was eighteen years old, was a licensed driver with one month's driving experience.

Shortly after the mother left her home on Fenton Street, Mrs. Laughorn got into her automobile and, with Angela lying on the front seat beside her, drove north on that street. She intended to make a sharp left turn (more than ninety degrees) at the intersection of Fenton Street, Jeffress Street and Ellyson Avenue, and to proceed west on Jeffress Street en route to her sister's house on Logan Street.

After Mrs. Laughorn had turned left onto Jeffress Street, her automobile veered toward the south (left) side of the street. Its left wheels crossed a low curb on the south side; then the automobile traveled about 36 feet in a westerly direction, with its left wheels on the south sidewalk, before hitting a telephone pole. Both Mrs. Laughorn and Angela were injured as a result of the collision.

The only testimony explaining why the accident happened was given by persons who repeated what Mrs. Laughorn said to them after the accident.

Mrs. Laughorn told the investigating officer "she made a left turn into Jeffress Street from Fenton, and after she made the turn she saw the sun was in the baby's eyes that she had laying on the seat beside of her. She turned to put something over the eyes of the baby, and when she looked back the car was over on the sidewalk".

The baby's mother testified Mrs. Laughorn said "she was riding along the road, that she looked down and she saw the sun in the baby's eyes, and she reached down and pulled the shawl up over the baby's eyes. And when she did, when she looked up, she was headed toward the telephone pole. And she said she didn't know what happened then".

The baby's father said "[a]ll she [Mrs. Laughorn] told me was that just when she looked at the baby and was going to pull this shawl over her eyes, and then she just don't know what happened. That's all that she told me".

Betsy Reaves (the only witness who saw the accident) testified Mrs. Laughorn "just said that she turned to attend the baby, and when she looked back it was going out of the street".

The investigating officer found dirt on Jeffress Street which indicated that the automobile crossed the curb at a point approximately 36 feet east of the telephone pole. He found no mark to indicate that after the automobile reached the sidewalk its brakes were applied or its wheels were turned to the right or left. Betsy Reaves said the automobile's speed remained constant until it struck the pole.

Photographs introduced in evidence show the front center of the automobile struck the telephone pole and, at the time of the collision, the left wheels were on the sidewalk and the right wheels were on Jeffress Street. The telephone pole, which stood on the south sidewalk near the curb, was 177 feet west of the intersection of Fenton and Jeffress Streets.

The speed limit on Fenton Street in the vicinity of the accident was 25 miles an hour. Mrs. Laughorn told the investigating officer her speed before the accident was about 30 miles an hour or "a little over that". Betsy Reaves said there was nothing about the operation of Mrs. Laughorn's automobile to attract her attention until she saw it veer to the left. She said the automobile's speed was "normal".

Jeffress Street is 34 feet wide at the scene of the accident. When the investigating officer arrived at the scene, about five minutes after the accident happened, he found automobiles parked on the right side of the street occupying six or eight feet of the width of the street. Betsy Reaves said that except for Mrs. Laughorn's automobile, there was no vehicular traffic on Jeffress Street at the time of the accident.

The evidence, which we have outlined, was introduced on behalf of the plaintiff, Angela. The defendant, Mrs. Laughorn, offered no

evidence. The plaintiff having received a favorable jury verdict, we must view the evidence and all proper inferences from the evidence in the light most favorable to her.

We can uphold the judgment for the plaintiff only if the evidence and proper inferences therefrom are sufficient to sustain the jury's finding of gross negligence. Va. Code Ann. § 8-646.1 (Repl.vol. 1957). "Gross negligence is . . . conduct showing such indifference to others as constitutes an utter disregard of prudence amounting to complete neglect of the safety of the plaintiff guest, that is, such a degree of negligence as should shock fair minded men although something less than wilful recklessness." *Laster* v. *Tatum*, 206 Va. 804, at 807, 146 S.E.2d 231, at 233 (1966).

The facts in this case are quite similar to the facts in *Finney* v. *Finney*, 203 Va. 530, 125 S.E.2d 191 (1962), where we held as a matter of law that the evidence was not sufficient to prove gross negligence. In that case the defendant's automobile hit a truck in the intersection of Llewellyn Avenue and 26th Street in Norfolk, injuring the plaintiff who was the defendant's guest-passenger. The defendant was driving south on Llewellyn Avenue, and the truck driver was driving east on 26th Street.

When the defendant's automobile was about two car lengths from the intersection, one of the passengers commented "about how much . . . [the plaintiff's] little girl had grown". Thereupon, the defendant looked at the little girl, who was sitting in the plaintiff's lap on the front seat. A witness said the defendant looked at the little girl for several seconds "and we hit". The defendant "did not look back up, I don't think, until after we had already hit". *Id.* at 531, 125 S.E.2d at 192.

A traffic signal was hanging over the center of the intersection, but the defendant failed to notice the signal because the red light controlling southbound traffic on Llewellyn Avenue was not functioning. She did not notice that northbound traffic (facing a functioning red light) had stopped. Testimony about the speed of the defendant's automobile ranged from 25 to 35 miles per hour. The applicable speed limit was 25 miles per hour.

The traffic signal controlling the truck driver, who was proceeding east on 26th Street, "turned green well before he got to the intersection". *Id.* at 532, 125 S.E.2d at 192. Two automobiles, which were ahead of the truck, passed in front of the defendant's automobile before it hit the truck.

We held in the *Finney* case that the defendant's inattention amounted to no more than ordinary negligence, not "an utter disregard of prudence amounting to complete neglect of the safety of her daughter-in-law and grandchild [the plaintiff and her child], such as to be shocking to reasonable men". *Id.* at 534, 125 S.E.2d at 194. Because the evidence was insufficient to support the jury's finding of gross negligence and the trial court's judgment for the plaintiff, we entered final judgment for the defendant.

*McDaniel* v. *Wern*, 206 Va. 819, 147 S.E.2d 158 (1966), is also quite similar to the present case. There the defendant, after turning at an intersection, looked down at the gearshift which was not functioning properly. While the defendant was looking down, his automobile crossed the curb on the right side of the street, and when he looked up his automobile was headed toward a tree standing near the curb. The automobile struck the tree, injuring the plaintiff, a guest-passenger. The plaintiff estimated the automobile's speed at 30 to 35 miles per hour at the moment of impact. The applicable speed limit was 25 miles per hour. The trial court set aside a verdict for the plaintiff because the evidence was insufficient to prove gross negligence. We affirmed.

Here, we have another case of ordinary negligence, not gross negligence. The jury was warranted in believing that Mrs. Laughorn was driving 30 miles an hour or "a little over that". This speed was approximately 5 miles an hour over the speed limit. Nevertheless, there was no other traffic on Fenton Street, and Betsy Reaves described Mrs. Laughorn's speed as "normal". The same observation may be made of Mrs. Laughorn's speed as was made in the *Finney* case: "There was nothing alarming in the speed at which she was driving". *Finney* v. *Finney, supra,* at 534, 125 S.E.2d at 193.

Like the defendants in the *Finney* and *McDaniel* cases, Mrs. Laughorn was guilty of inattention, rather than gross negligence. At some time after Mrs. Laughorn had turned onto Jeffress Street, her attention was diverted from the road ahead while she covered Angela's eyes to protect them from the rays of the sun. Her inattention necessarily lasted only a few seconds, because she looked up when "the car was over on the sidewalk" or when "it was going out of the street". At 30 miles an hour, her automobile was traveling 44 feet a second. See Tables of Speed and Stopping Distances, Va. Code Ann. § 46.1-195 (Repl.vol. 1958).

After Mrs. Laughorn looked up, she traveled 36 feet (or perhaps

a shorter distance) along the sidewalk, without turning the steering wheel or applying the brakes to avoid hitting the telephone pole. She could not have been expected, however, to react immediately upon seeing the danger ahead. When traveling 30 miles an hour, the average person can be expected to react after he has traveled 33 feet. See Tables of Speed and Stopping Distances, *supra*. If, then, Mrs. Laughorn had reacted like the average person, she would have turned the steering wheel or applied the brakes (or both) when she was at a point 3 feet from the telephone pole. Whether or not the average person in Mrs. Laughorn's situation would have taken action or could have taken effective action to avoid hitting the pole, Mrs. Laughorn's failure to take action under the circumstances did not indicate an utter disregard of prudence amounting to complete neglect of the safety of her niece, such as to be shocking to reasonable men. See *Finney* v. *Finney*, *supra*, at 534, 125 S.E.2d at 194.

■ Counsel for Angela points out that Mrs. Laughorn placed Angela on the automobile seat, without "any contraption or device" to hold her on the seat. But counsel did not allege or prove that Angela was injured as a result of Mrs. Laughorn's failure to use such a "contraption or device". He alleged and proved that Angela suffered injury as a result of the collision with the telephone pole. The fact that Angela was not secured to the front seat of the car was not a proximate cause of the collision. The chain of circumstances that led to the accident began when Mrs. Laughorn directed her attention to Angela. She directed her attention to Angela because "she saw the sun in the baby's eyes", not because of any indication that Angela might fall off the seat.

Of the Virginia cases sustaining a finding of gross negligence, *Chappell* v. *White*, 182 Va. 625, 29 S.E.2d 858 (1944), is most nearly in point. The defendant in that case, who was driving between 35 and 45 miles an hour, inadvertently permitted her automobile to travel to the extreme left side of a three-lane highway. She then realized the danger of her situation and grabbed the top of the steering wheel, but permitted her automobile to travel with undiminished speed 75 to 90 feet diagonally across the left shoulder of the highway. No other traffic was on the highway, but the defendant did not attempt to turn her automobile toward the center of the highway; and she did not apply her brakes. The automobile turned over and came to rest at the bottom of a ditch, approximately 6 feet from the hard surface. We

held that reasonable men could differ whether these facts and proper inferences therefrom proved gross negligence.

The facts in this case are distinguishable from the facts in the *Chappell* case. Mrs. Laughorn was only 36 feet from the telephone pole when she discovered her position of peril. In the *Chappell* case, the jury could have concluded that the defendant traveled 90 feet after discovering her position of peril. At 30 miles an hour (Mrs. Laughorn's speed), the average driver, upon seeing danger, would travel 33 feet before taking action to avoid the danger; and at 45 miles an hour (Mrs. Chappell's maximum speed), the average driver, upon seeing danger, would travel 50 feet before taking action to avoid the danger. See Tables of Speed and Stopping Distances, *supra*. Since the average person in Mrs. Laughorn's position would not have reacted before traveling 33 feet, we have found that Mrs. Laughorn's failure to take action while traveling 36 feet does not indicate gross negligence. This holding does not contradict our holding that a jury issue of gross negligence was presented in the *Chappell* case. The average person in Mrs. Chappell's position would have reacted after traveling 50 feet, but she traveled an additional 40 feet without taking any action to avoid the accident.

Counsel for Angela relies also upon *McDowell v. Dye*, 193 Va. 390, 69 S.E.2d 459 (1952), where the host-driver lost control of her automobile and it struck a pole. That case, however, is distinguishable from this case, as shown by the following excerpt from the *McDowell* opinion: "[T]he car was being operated at an unlawful speed in a restricted zone. The plaintiff warned the defendant of the excessive speed before the crash. Plaintiff protested the drinking of the coca-cola in the town and suggested that defendant get out of town into the open country before she attempted to drink it. All warnings and suggestions were ignored. Defendant, without slackening her speed, turned in her seat, reached for the coca-cola with one hand off the steering wheel and her eyes focused upon the coca-cola instead of the road." *Id.* at 398, 69 S.E.2d at 465.

Our order will reverse the judgment of the trial court and enter final judgment for the defendant, Linda W. Laughorn.

*Reversed and final judgment.*