# Richmond

## WILLIAM CAREY PENINGTON, JR. v. HARRY LEE BEAMON, JR

January 18, 1971.

Record No. 7231

Present, Snead, C.J., I'Anson, Carrico, Gordon, Harrison and Harman, JJ

*Thomas J. Harlan, Jr. (Doumar, Pincus, Anderson & Knight,* on brief), for plaintiff in error.

*Richard G. Brydges (Brydges, Broyles & McKenry,* on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

Plaintiff, Harry Lee Beamon, Jr., obtained a jury verdict against the defendant, William Carey Penington, Jr., for personal injuries sustained while riding as a guest passenger in an automobile operated by defendant. Judgment was entered on the verdict, and defendant is here on a writ of error.

Defendant's sole contention is that the evidence is not sufficient to support the finding of gross negligence.[1]

Plaintiff's injuries arose out of a single car accident which occurred between 2:30 and 3:15 o'clock in the afternoon of May 9, 1966, while defendant was operating his Austin-Healey convertible sports car south on State Route 132 in York County, Virginia, six-tenths of a mile north of the city limits of Williamsburg. Route 132 is a two-lane, blacktop highway. At the place where the accident occurred the highway is upgrade for vehicles traveling south. The speed limit was 55 miles per hour. The weather was clear and the roadway was dry. Photographs introduced into evidence show that on each side of the highway there is a grass embankment which inclines at an angle of approximately 45 degrees to a point 12 feet above the level of the roadway.

Alice Lundeberg testified that she was traveling north (downhill) on Route 132 when she saw an object leave the highway. It then came back on the road and was "fishtailing and out of control." She was unable to identify the object. When it appeared to be heading toward her she stopped her car and started backing up. The object went off the road again and traveled up the embankment into some trees. When it came rolling down the embankment and landed in a culvert alongside the shoulder of the road she realized the object was an automobile. She said she was a poor estimator of speed, but she guessed the car was traveling between 40 and 50 miles per hour when it ran off the road the second time.

Trooper Phillips arrived on the scene soon after the accident occurred. He found defendant's automobile in the culvert resting on its top and headed in the direction whence it had come. Plaintiff had been thrown clear of the car into a ditch, and defendant was pinned under the car. The trooper and others turned the car over and freed defendant. From the swerve marks on the highway and the path the car took off the roadway, the trooper determined that it traveled out of control a total distance of 302 feet. He traced the path of the car a distance of 43 feet up the incline and along the ridge of the embankment. Shrubbery and trees were cut down along the way.

After making an investigation at the scene, the trooper went to the Williamsburg Community Hospital to talk with defendant about how the accident had occurred. After the trooper told defendant that he did not have to make any statement, defendant said, "I had three or

---

1. Code § 8-646.1 (1957 Repl. Vol.)

four beers and I am not used to drinking. I was driving, and the car seemed O.K. I don't remember after that."

Plaintiff, called as an adverse witness by defendant, testified that he remembered nothing about the accident because he was drunk and had fallen asleep approximately an hour before it occurred. He and defendant had been drinking beer and whiskey, and defendant had taken two drinks of whiskey.

Defendant testified that he and plaintiff had been together since 7:30 a.m. on the day of the accident; that he had had two beers and only one drink of whiskey during the morning; and that he had not consumed any alcoholic beverages after the noon hour. He heard a "bang" immediately before the car went out of control. He did not apply the brakes of the car because it would have gone "around in a circle." The last time he looked at the speedometer he was traveling 50 miles per hour. He said that he did not know what statement he had made to the trooper. He examined his car two or three days later, and upon seeing that the front and rear tires on the right side were flat he realized that the "bang" he heard was a blowout.

Photographs of defendant's car, some of which were taken by the trooper at the scene of the accident, were introduced in evidence. The photographs show the car resting in tall grass and do not clearly show the condition of its tires. The trooper could not recall whether any of the tires were flat.

Whether the conduct of a person operating an automobile amounts to gross negligence within the meaning of Code § 8-646.1 depends upon the facts and circumstances surrounding the particular case. When the evidence is in conflict and reasonable men may disagree on the inferences or conclusions to be drawn therefrom as to whether the operation of a motor vehicle amounted to gross negligence, there is presented a question of fact for the jury and not one of law for the court. *McDowell* v. *Dye*, 193 Va. 390, 397, 69 S.E.2d 459, 464 (1952); *Foster* v. *Willhite*, 210 Va. 589, 596, 172 S.E.2d 745, 751 (1970).

Gross negligence has been defined as conduct by the operator of an automobile which shows such indifference to the safety of others as constitutes an utter disregard of prudence amounting to complete neglect of the safety of his guest. *Laughorn* v. *Eanes*, 207 Va. 584, 587, 151 S.E.2d 378, 380 (1966); *Nichols* v. *Brizendine*, 210 Va. 158, 161, 169 S.E.2d 457, 459 (1969).

Defendant relies on *Grasty* v. *Tanner*, 206 Va. 723, 146 S.E.2d 252 (1966), to support his position that the evidence did not make

out a case of gross negligence, and he compares the facts in that case with those in the present case.

The facts in *Grasty* are readily distinguishable. There plaintiff administrator attempted to show the speed of the automobile from the course it traveled when it left the hard surface of the highway and the extent to which the car was damaged. Plaintiff's evidence did not show what caused the automobile to leave the highway or at what speed it was traveling at the time. We said that the vehicle's speed may have been the causative factor, but so might have been the blowout of the right front tire, a defect in the steering apparatus or the accelerator, or some other factor for which the driver would not have been responsible.

In the present case the defendant admitted to the trooper shortly after the accident that he had consumed three or four beers, which he was not used to drinking, and that there was apparently nothing wrong with the car to cause it to go out of control. This admission expressly or impliedly eliminated the possibility that the accident was caused by a blowout or some mechanical defect in the car.

The statements made by the defendant to the trooper, together with the inferences that may be reasonably drawn therefrom, and defendant's testimony at the trial are in direct conflict as to what caused him to lose control of his car. The conflict in the evidence and the credibility of the witnesses presented questions for the jury. From a consideration of all the evidence, the jury rejected defendant's testimony that he lost control of his car because of blowout and found that the accident was caused by defendant's manner of driving after he had consumed a quantity of alcoholic beverages, which was consistent with his admission to the trooper.

We cannot say as a matter of law that the evidence does not support the finding of the jury that the defendant was operating his automobile in such a manner as to show an indifference to the safety of others and an utter disregard of prudence amounting to complete neglect of the safety of his guest, which constitutes gross negligence.

Accordingly, the judgment is

*Affirmed.*