## Richmond

GEORGE CHRISTOPHER HABERS v. RICHARD MADIGAN, ADMINISTRATOR
OF THE ESTATE OF JACQUELINE MADIGAN, DECEASED, ET AL.

January 15, 1973.

Record No. 7969.

Present, All the Justices.

*J. Randolph Larrick* (*Largent, Anderson and Larrick*, on brief),
for plaintiff in error.

*Thomas V. Monahan* (*Hall, Monahan, Engle, Mahan & Mitchell*,
on brief), for defendants in error.

I'ANSON, J., delivered the opinion of the court.

Richard Madigan, administrator of the estate of Jacqueline Madigan,
deceased, brought this action against George Christopher Habers, Paul
Shafer Howell, and H. C. Gabler, Inc., for the wrongful death of his
daughter, Jacqueline. A jury trial resulted in a verdict of $40,000
against all the defendants and judgment was subsequently entered on
the verdict. All three defendants petitioned this court for writs of
error. We denied the petitions of Howell and H. C. Gabler, Inc. but
granted Habers a writ of error to the judgment.

Habers contends (1) that there was no evidence showing that he was grossly negligent; (2) that the trial court erred in admitting certain evidence; and (3) that the judgment against him is void because a guardian *ad litem* had not been appointed to represent his interests before the jury returned their verdict.

The evidence shows that at approximately 6:15 p.m. on December 8, 1967, Habers, an infant born on August 27, 1948, was the operator of an automobile traveling north on Interstate 81, a short distance east of the City of Winchester, when his car collided with the rear of a tractor-truck driven in the same direction by defendant Howell, who was at the time the agent and employee of defendant H. C. Gabler, Inc. After striking the tractor-truck, the Habers car traveled approximately 296 feet and overturned in the median strip of the highway. The collision caused the death of Jacqueline Madigan, who was a guest passenger in Habers' car, and seriously injured Habers.

Interstate 81 at the point of the accident is a straight, divided highway, having marked lanes proceeding north and south, and with a slight upgrade to the north. It was a dark night, and the weather was clear and dry.

State trooper F. M. Bauserman appeared on the scene shortly after the accident had occurred and conducted an investigation. He measured the distances the two vehicles traveled from the point of collision, took pictures of the scene, talked to the drivers of the vehicles, and examined the taillight on the tractor-truck. He testified that there were no running lights on the rear of the tractor-truck and that its taillight lens was covered with heavy dirt, except for an area from which the dirt had been scraped. When Howell drove the tractor-truck from the scene Bauserman followed in his car, and he said that the "rear taillight [on the tractor-truck] was very dim. It was just a small red, dim light." He could see the taillight through the cleared area of the lens from a distance of only two or three car lengths.

Defendant Habers, called as an adverse witness, could not recall any of the events occurring just prior to or at the time of the collision.

Defendant Howell testified that before the accident he had driven the tractor with a trailer attached from Boston, Massachusetts, to the Gabler terminal at Kernstown (two miles from the scene of the accident). He arrived at the terminal at approximately 6 p.m. After detaching the trailer he noticed that the taillight on the tractor was "extremely dirty." The lens was cracked and "it was dirty on both sides." He used his hand "to rub the red part of the light so it

could be seen." Shortly thereafter he left the terminal in the tractor-truck, and while driving it north on Interstate 81 in the right-hand lane at a speed of approximately 48 miles an hour, he noticed the Habers car and estimated it was traveling at twice his speed. The Habers car crashed into the rear of the tractor-truck with such force that it pushed the left rear wheel of Howell's vehicle forward 8 to 10 inches and broke the rear spring. As the Habers car skidded by his vehicle he noticed that the dome light was on inside the car.

We do not agree with Habers' contention that the evidence was insufficient to create a jury issue as to whether or not he was grossly negligent. The evidence presented a question for the jury to determine whether Habers operated his automobile in such a manner as to show an indifference to the safety of others and in utter disregard of prudence amounting to the complete neglect of the safety of his guest. *Penington* v. *Beamon*, 211 Va. 493, 495-96, 178 S. E. 2d 511, 513 (1971).

■ Counsel for Habers contends that the trial court erred in admitting evidence of the results of an experiment or test, conducted a year after the collision, for the purpose of showing the visibility of the taillight on the tractor-truck at the time of the accident.

The experiment was conducted at the scene of the accident by defendant Howell, his counsel, and a representative of defendant Gabler at 8:30 p.m. on the night before the trial of this case in the court below. The experiment consisted of placing the taillight, which had been removed from the tractor-truck, 24 inches above the surface of the road on a child's high chair. The taillight was covered by a disk and pointed south at the impact scene. An aperture, approximately the same size as the clean portion of the taillight on the tractor-truck at the time of the accident, was made in the covering disk. The taillight was connected by "jumper cables" to a 12-volt battery. Howell walked 200 paces south from the high chair along the shoulder of Interstate 81 and testified that he could see the experimental light from that distance.

An experiment made out of court for the purpose of testing visibility existing at a particular time and place does not have to be made under the identical conditions and circumstances prevailing at the time of the occurrence involved in the controversy before it can be admitted in evidence, but in order for the test and the results thereof to be admissible the conditions and circumstances under which the experiment was conducted must be substantially similar in essential particulars. *Lane* v. *Hampton, Adm'r,* 197 Va. 46, 49, 87 S. E. 2d

803, 805 (1955); *Bell* v. *Kenney*, 181 Va. 24, 29-30, 23 S. E. 2d 781, 783 (1943); *N. & W. Ry. Co.* v. *Henderson*, 132 Va. 297, 311, 323, 111 S. E. 277, 282, 286 (1922). Cf. *Doss* v. *Martin*, 205 Va. 306, 308-11, 136 S. E. 2d 854, 856-57 (1964).

In the present case the experiment was made a year after the collision occurred under conditions and circumstances substantially dissimilar to those prevailing at the time of the occurrence here involved. Before the taillight was removed from the tractor-truck it was a part of its over-all electrical system which was connected to two 6-volt batteries, while at the time the experiment was conducted the evidence shows that jumper cables were used to connect the taillight to one 12-volt battery. There was expert testimony that at the time of the accident the taillight on the tractor-truck could have received its power from the tractor-truck batteries, the alternator, or both. Two moving vehicles were involved at the time of the accident, while in the test Howell was standing on the shoulder of the road looking for a stationary light he knew was in the northbound right-hand lane of the highway. Nor did the placing of the taillight on a chair in the highway provide the same background that prevailed at the time of the accident. Since the experiment was conducted under conditions which were substantially dissimilar in essential particulars to those existing at the time of the accident, the evidence was inadmissible and it was prejudicial to Habers' case. It thus constituted reversible error to admit in evidence the results of this experiment.

Since the judgment against Habers will have to be reversed and the case remanded, the question of the failure to appoint a guardian *ad litem* for him until after the verdict of the jury will not arise on the retrial of the case, and it is unnecessary for us to consider this assignment of error.

The judgment entered against Habers is reversed and the case is remanded for a new trial.

*Reversed and remanded.*